## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAMELA ANNE NUGENT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 10-266 (RMC)** |
| ) | |
| **UNUM LIFE INSURANCE COMPANY** ) | |
| **OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Pamela Ann Nugent, M.D., claims lifetime disability benefits from Unum Life Insurance Company of America as a result of concussive syndrome from which she suffers since an automobile struck her car in 1999. Dr. Nugent has been unable to work in her sub-specialty, neuroradiology, since that time. Unum agrees that Dr. Nugent was initially fully disabled under the terms of her policy but insists that she fully recovered by June 1, 2002, when she took a part-time job that was not in her sub-speciality. Dr. Nugent sues for a declaration of her continuing disability, full payment of past benefits from Unum plus interest, the return of premiums paid to Unum during the period of her total disability, payment now of future benefits, and recompense for Unum's alleged breach of its duty of good faith and fair dealing and alleged intentional infliction of emotion distress.

Unum moves to dismiss Count II, breach of the covenant of good faith and fair dealing; Count IV, intentional infliction of emotional distress; Count V, for punitive damages; and Count VI, for attorney fees based on Unum's alleged vexatious, wanton and oppressive handling of

Dr. Nugent's claim. Unum argues that these Counts must fail as a matter of law. Unum also asks the Court to strike paragraphs 57–75, 84, 88–91, 93–94, 100, 103–127, and 132–144 of the Complaint because Dr. Nugent signed a waiver that allegedly bars her from pursuing any legal action against Unum based on any aspect of the original denial of benefits. For the reasons set forth below, Unum's motion to dismiss and to strike will be denied in part and granted in part.

## I. FACTS

A short summary of the facts will suffice to address the pending motion.

### A. The Plaintiff

Pamela A. Nugent is a physician trained in neuroradiology.[1] Neuroradiology is a sub-specialty of radiology which concentrates on the diagnosis of abnormalities of the central and peripheral nervous system, spine, head and neck. Dr. Nugent began practicing in 1993, after a decade of education and training, and took maternity leave in 1996. Prior to her leave of absence, Dr. Nugent was working as a neuroradiologist for approximately 52 hours per week and earning $130,000 a year. During her maternity leave, Dr. Nugent enrolled in all continuing education courses necessary to reactivate her medical license following leave, and was about to reactivate her license and return to work when she was involved in an automobile accident.

On November 12, 1999, Dr. Nugent was driving alone in Montgomery County, Maryland, when another vehicle crashed into the side of her car. Dr. Nugent felt incredibly dazed right after the accident. About a week later, she began to experience migraine headaches coupled

---

[1] The facts are taken from the Complaint, and the Court treats these factual allegations as true and draws all reasonable inferences in the plaintiff's favor for the purpose of the Defendant's motion. *See, e.g., Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).

with nausea, vomiting, photophobia (extreme light sensitivity), and phonophobia (extreme sound sensitivity). Dr. Nugent did not have a history of these symptoms prior to the car accident. Over a period of years, Dr. Nugent was examined by a series of physicians, including neurologists, specialists in pain management, and neuropsychologists, all of whom essentially diagnosed "post-concussive syndrome characterized by persistent attentional problems which are impacting memory, reading concentration and sequential or multi-task activities." Compl. ¶ 30. Each physician traced the continuing migraines and other ailments to the automobile accident.

In late 2001, Dr. Nugent decided that due to her debilitating symptoms she could not return to work in her sub-specialty of neuroradiology. However, Dr. Nugent wished to work in some capacity. In June 2002, Dr. Nugent attempted to return to the medical profession, although not as a neuroradiologist, by working two or three days a week at the Naval Medical Center in Bethesda, Maryland. Because of "breakthrough migraines . . . probably related to high levels of situational stress" at work, Compl. ¶ 46, she was forced to resign her position on June 1, 2004. Despite undulations in the severity of her symptoms over the years, Dr. Nugent continues to suffer from severe bouts of migraines, vertigo and attention deficits. This "persistent post-concussive syndrome" causes her to suffer "the following cognitive weaknesses and symptoms: [s]hort-term concentration weakness; [m]emory weakness; [e]xecutive skills weakness; [w]ord retrieval weakness; [e]xcessive mental fatigue; [m]igraine headaches." Compl. ¶ 56.

### B. The Insurance Company

Defendant Unum Life Insurance Company of America is a private insurance company which sells disability insurance. Unum is a subsidiary of Unum Group, formerly known as UnumProvident Corporation. In 1990, Dr. Nugent purchased a "Disability Income Policy" from

Unum, which became effective on July 10, 1990, and remains in effect today. The Unum Policy broadly defines "total disability" and "regular occupation" and extends the benefit period to Dr. Nugent's entire lifetime. Dr. Nugent has timely paid all premiums.

Dr. Nugent contacted Unum on January 31, 2001, about her disability. She reported that she had suffered a head injury from the November 1999 automobile accident, that the symptoms of the injury were ongoing and severe, and that the symptoms prevented her from returning to work as a neuroradiologist. When she heard nothing from Unum, Dr. Nugent called on November 14, 2001, and was informed that she needed to contact Unum's office in Worcester, Massachusetts, directly.

Thereafter followed months of alleged avoidance and mishandling by Unum until a letter dated September 23, 2003, informed Dr. Nugent that Unum would pay her $58,361 in benefits covering the period November 30, 2002, through December 1, 2003. Dr. Nugent's claim alleged that her disability began days after the automobile accident in 1999. The letter also said that Unum was continuing to investigate the claim.

In the meantime, UnumProvident, including Unum, was under a multi-state investigation by the United States Department of Labor, forty-eight states, the District of Columbia, and Samoa into widespread abuse in handling disability claims. This investigation culminated in a report, highly critical of UnumProvident and its related companies. UnumProvident, and its subsidiaries, thereafter entered into a Regulatory Settlement Agreement, paid a fifteen million dollar fine, and established a Claim Reassessment Process to allow policyholders whose claims had been denied after January 1, 1997, an opportunity to resubmit their claims for reconsideration.

By letter dated January 21, 2005, Unum advised Dr. Nugent that she had a right to

have her claim reassessed through the Claim Reassessment Process. Dr. Nugent submitted a formal request to participate, which Unum acknowledged. More than a year later, on March 28, 2006, Unum informed Dr. Nugent that it was ready to begin its reassessment. By letter dated November 26, 2007, Unum announced that, upon reconsideration, it agreed that Dr. Nugent had become totally disabled following the automobile accident on November 12, 1999, but it considered the disability to have come to an end when Dr. Nugent returned to work as a part-time radiologist at the Naval Medical Center on June 1, 2002. Unum also concluded that Dr. Nugent "never had any restrictions or limitations due to any diagnosable neurological condition," Compl. ¶ 94, and that "it is quite unlikely that this claimant has any cognitive deficits on the basis of the motor vehicle accident." *Id.* ¶ 95. Unum awarded Dr. Nugent $125,338.71 in benefits and interest.

To be eligible for the Claim Reassessment Process, a claimant must have first signed a waiver. On March 9, 2005, and again on January 26, 2007, Dr. Nugent signed Unum's "Conditional Waiver and Release" that stated, in whole:

> By choosing to participate in the Claim Reassessment Process, I hereby agree that if (and only if) the reassessment results in a reversal or other change in the prior decision denying or terminating benefits, I will not pursue any legal action to the extent (and only to the extent) such action is based on any aspect of the prior denial or termination that is reversed or changed. If I receive any additional benefits as a result of this reassessment, I hereby waive and release any right to sue UnumProvident Corporation, its insurance subsidiaries* and duly authorized representatives, for their prior failure to pay those same benefits to me. If I have already commenced legal action relating to my prior claim(s) decision, I will take such action as is necessary to stay such litigation pending the reassessment process, if the court will agree to such a stay, and I agree that if (and only if) the reassessment results in a reversal or other change in the prior decision denying or terminating benefits, then I will withdraw any litigated claim, including any extra-contractual claims, to the extent (and only to the extent) such claims are based on any aspect of the prior denial or termination that is reversed or changed. To the extent that following the reassessment there

remains a complete or partial denial of benefits, my right to initiate or continue litigation regarding that portion of the prior denial that has not been reversed or changed is not waived. In addition, any applicable statute of limitations is tolled during the pendency of the reassessment of my claim; however, I understand that my participation in the Claim Reassessment Process will not revive or reinitiate the statute of limitations with respect to the previous claim decision.

This waiver and release will not apply to the extent that any prior decision is not reversed as a result of the Claim Reassessment Process.

Pl.'s Opp'n [Dkt. # 13] ("Opp'n"), UnumProvident Conditional Waiver and Release [Ex. A] ("Waiver & Release") (asterisk links to a note naming the various subsidiaries of UnumProvident Corporation, which includes Defendant Unum Life Insurance Company of America).

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief. *Id.* at 555 n.3. "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v.*

*Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

Federal Rule of Civil Procedure 12(f) permits a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court has broad discretion in ruling on a motion to strike; however, striking portions of a pleading is a drastic remedy, and motions to strike are disfavored. *See Nwachukwu v.*

*Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003); *Uzlyan v. Solis*, 706 F. Supp. 2d 44, 51 (D.D.C. 2010);

*Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty., Ltd.*, 647 F.2d 200, 201 (D.C.

Cir. 1981). Although the Rule does not require the moving party to show that it would be prejudiced

should the allegations remain part of the pleading, "courts view motions to strike portions of a

complaint with such disfavor that many courts will grant such a motion only if the portions sought

to be stricken as immaterial are also prejudicial or scandalous." *Uzlyan*, 706 F. Supp. 2d at 52

(*citing Makuch v. FBI*, Civ. No. 99-1094, 2000 U.S. Dist. LEXIS 9487, *7 (D.D.C. Jan. 6, 2000));

*see also Wiggins v. Phillip Morris, Inc.*, 853 F. Supp. 457, 457 (D.D.C. 1994) ("[I]f allegations in

a complaint are irrelevant and prejudicial to the defendant, a motion to strike will be granted").

### III.  ANALYSIS

#### A.  Scope of the Conditional Waiver and Release

Unum argues that Dr. Nugent, by agreeing to have her claim reassessed, has "waived

the right to pursue any legal action to the extent the Claim Reassessment Process resulted in a

reversal of the earlier decision." Def.'s Mem. in Supp. of Mot. to Strike and Partial Mot. to Dismiss

[Dkt. # 7] ("Def.'s Mem.") 9. The waiver states that Dr. Nugent may not "pursue any legal action

to the extent (and only to the extent) such action is *based on any aspect of the prior denial or*

*termination that is reversed or changed*." Waiver & Release (emphasis added). It is not contested

that Dr. Nugent may sue for benefits originally claimed, but for which Unum did not reverse or

change its original denial through the Claim Reassessment Process. *See* Def.'s Reply in Supp. of

Mot. to Strike and Partial Mot. to Dismiss [Dkt. # 15] ("Reply") 7, 7 n.8. The Claim Reassessment

Process reversed Unum's original decision only as to a fixed period of time; from November 12,

1999, the date of the car accident, to June 1, 2002, the date Dr. Nugent returned to work part-time.

For this period, Unum now found that Dr. Nugent was entitled to benefits.

Unum further reads the "any aspect" language of the waiver to preclude Dr. Nugent from raising factual allegations about the original claims process to seek either contractual or extra-contractual damages.  In effect, Unum argues Dr. Nugent may not sue for any potential causes of action relating to the original claims process.  Not so.  Dr. Nugent cannot sue here for any disability benefits for the period covered by the reassessment award she received — and she does not.  *See* Compl. ¶ 84 (reassessment process ultimately provided benefits for a "closed period of time" from the 1999 accident until June 1, 2002), Compl., Prayer for Relief A (seeking disability benefits from June 1, 2002, to the present).  Unum contends that Dr. Nugent "voluntarily waived her right to pursue any cause of action based upon the initial claims process and denial of benefits."  Def.'s Mem. 9–10.  But that is not what the waiver says, and certainly Unum only reversed or changed its *benefit* decision, not any of its other actions.

Unum posits that "the first two sentences of the waiver preclude Plaintiff from pursuing any legal action – whether for contractual or extra-contractual damages – based on any aspect of the original claims process."  Reply 7.  Yet, the only sentence mentioning extra-contractual damages is the third sentence of the waiver, which does not pertain to Dr. Nugent.[2]  The waiver explicitly required a litigating plaintiff to abandon extra-contractual claims in sentence three, yet fails

---

[2] "*If I have already commenced legal action relating to my prior claim(s) decision,* I will take such action as is necessary to stay such litigation pending the reassessment process, if the court will agree to such a stay, and I agree that if (and only if) the reassessment results in a reversal or other change in the prior decision denying or terminating benefits, then I will withdraw any litigated claim, *including any extra-contractual claims*, to the extent (and only to the extent) such claims are based on any aspect of the prior denial or termination that is reversed or changed."  Waiver & Release (emphasis added).  Inasmuch as Dr. Nugent had not commenced legal action as of January 26, 2007, the second occasion that she signed the waiver, this sentence clearly does not apply to her.

to mention extra-contractual claims in sentences one or two, or in relation to the "based on any aspect of the prior denial or termination that is reversed or changed" language. If the third sentence can specifically require plaintiffs to withdraw *all* presently litigated claims — contractual or extra-contractual, and the first two sentences fail to mention extra-contractual claims, the breadth of the first two sentences is not as encompassing as Unum suggests.

The Court finds that the waiver does not preclude extra-contractual claims relating to the initial claims process. However, to the extent the waiver were ambiguous, it should be construed against Unum. *See, e.g., Affordable Elegance Travel, Inc. v. Worldspan*, L.P., 774 A.2d 320, 328 (D.C. 2001); *see also Fitts v. Unum Life Ins. Co. of Am.*, Civil No. 98-617, 2006 U.S. Dist. LEXIS 9235, *10 (D.D.C. Feb. 23, 2006) ("The doctrine is applied to insurance contracts because insurance contracts are typically drafted by the insurance company, because insurance companies tend to be repeat players with greater expertise and experience in insurance matters than plan beneficiaries, and because beneficiaries have no opportunity for arms-length negotiation over the terms of the plan."). Although Unum may have negotiated at arms-length with federal and state regulators in creating the waiver, Dr. Nugent asserts without contradiction that she had no opportunity for arms-length negotiation with Unum over the terms of the waiver. If the contract were ambiguous, it would be that the "any aspect" language does not just preclude a plaintiff from suing based on a contention concerning the ultimate reversed or changed decision (*i.e.*, the award of benefits from November 1999 to June 2002), as opposed to a wholesale prohibition of invoking facts or allegations involving the original claims process, and the various years it spanned.

**B. Intentional Infliction of Emotional Distress**

Unum asserts that the allegations in Dr. Nugent's Complaint are insufficient to meet

the high standard for stating a claim of intentional infliction of emotional distress and that, in any event, her effort to circumvent the prohibitions on extra-contractual damages fails as a matter of law because her basic claim lies in breach of contract. A plaintiff seeking damages for intentional infliction of emotional distress must establish "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress." *Stevenson v. Bluhm*, Civ. No. 06-632, 2006 U.S. Dist. LEXIS 79148, at *6 (D.D.C. Oct. 31, 2006) (quoting *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)).

The Court need only address Unum's second attack on this claim. Unum argues that Dr. Nugent's claim of intentional infliction of emotional distress fails as a matter of law since the alleged injuries underpinning this claim are not independent of Dr. Nugent's claim for breach of contract. The Court agrees. This claim, which relies on extreme and outrageous behavior, is nonetheless firmly rooted in Dr. Nugent's contractual relationship with Unum. The dispositive case here is *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080 (D.C. 2008). There, appellant Mr. Choharis contested the trial court's grant of summary judgment to State Farm on his tort claims for fraud and negligent misrepresentation. The D.C. Court of Appeals explained:

> A cause of action that could be considered a tort independent of contract performance is a viable claim, even in the insurance context. As has been said, the injury to the plaintiff must be "an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit." Put another way, the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship. The tort must stand as a tort even if the contractual relationship did not exist.
>
> Thus, conduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim when there are facts separable from the terms of the contract upon

> which the tort may independently rest and when there is a duty
> independent of that arising out of the contract itself, so that an action
> for breach of contract would reach none of the damages suffered by
> the tort.

*Choharis*, 961 A.2d at 1089 (internal citation omitted). The D.C. Court of Appeals upheld the

dismissal of Mr. Choharis's tort claims because they did not exist independently of his contract

claims, as the torts rested on damages caused by delay or refusal to make payments and

misrepresentations which could be compensable under contract principles. *Id*. at 1089–91.

      Unum argues that "the duties Plaintiff alleges Unum breached [as to this tort] were

those duties she claimed it undertook pursuant to its contract with her," and thus could not be

independent of the contract action. *See* Def.'s Mem. 17. Dr. Nugent counters that her claim focuses

on Unum's "outrageous pattern of conduct," which constitutes an independent injury she suffered

above and beyond her unfulfilled expectation that Unum would abide by its contractual obligations.

Opp'n 30. Dr. Nugent cites to cases that recognize that a defendant's breach of contract "may give

rise to allegations of intentional, tortious infliction of emotional distress." *Asuncion v. Columbia*

*Hosp. For Women*, 514 A.2d 1187, 1190 n.3 (D.C. 1986); *see also Sere v. Group Hospitalization,*

*Inc.*, 443 A.2d 33, 37–38 (D.C. 1982); *Washington v. Government Employees Ins. Co.*, 769 F. Supp.

383, 388, 388 n.8 (D.D.C. 1991). These cases certainly provided that a tort action could proceed

when a breach of contract "merge[d] with, and assume[d] the character of the tort of intentional

infliction of severe emotional distress." *Sere*, 443 A.2d at 37.

      However, *Choharis* added the requirement that a tort action, pleaded in the context

of a contract claim, be "independent." Dr. Nugent is correct, Opp'n 31, that the D.C. Court of

Appeals left open the possibility that various torts could arise within or beside the mishandling of

a contract claim. *Choharis*, 961 A.2d at 1088 (offering intentional infliction of emotional distress

as an example). Yet, the two examples provided by the local Court are illuminating. It noted that

an insurance company, or its agents, which slanders or assaults an insured claimant in the course of

a claims dispute could be subject to tort liability in addition to the contract claim. *Id.* What is

crucial in those examples is that the duty to refrain from defaming or assaulting someone is not a

duty based in contract, and would exist even if the contractual relationship were absent. Here, the

duty of which Dr. Nugent essentially complains — the duty to honestly, expeditiously, and in good

faith, without harassment, process her claims — necessarily arose from the contractual relationship.

In other words, but for the contract between Dr. Nugent and Unum, there would be no independent

facts or bases sufficient to support an intentional infliction of emotional distress claim.

Dr. Nugent points to several allegations, which taken as a whole, allegedly

demonstrate Unum's pattern of outrageous and extreme conduct.[3] Opp'n 23–24. The common

---

[3] *See, e.g.,* Compl. ¶ 104 ("Unum's handling of Dr. Nugent's disability claim has been characterized by abusive and humiliating treatment of Dr. Nugent, excessive delay, misrepresentations of the applicable law and policy language, and downright incompetence."), ¶ 106 ("Instead of paying Dr. Nugent the just compensation that she contracted and paid for, Unum has dragged her through one humiliating experience after another – frequently questioning her veracity, failing to return her phone calls for weeks or months at a time, harassing her with repeated requests for information that she had previously provided, giving her misleading and inconsistent information about the extent of the coverage provided by the Unum Policy, repeatedly replacing the Unum representative handling her claim, refusing to explain the bases of its partial benefit payments, and taking years to reach a final coverage decision. These same abuses continued during Unum's Claim Reassessment Process."), ¶ 108 (alleging Unum attempted to "buy her off" so she would abandon her claim), ¶ 112 (alleging Unum misrepresented the applicable coverage provisions of Dr. Nugent's policy), ¶ 134 (alleging that despite knowing the state of Dr. Nugent's physical and mental well-being, and her peculiar susceptibility to emotional distress, Unum subjected her to great stress through the allegations that exacerbated her condition). While not an exhaustive list of the allegations that are meant to support Dr. Nugent's claim of intentional infliction of emotional distress, these examples fairly represent the gist of the factual allegations as a whole, and are the very examples cited by Dr. Nugent to demonstrate Unum's outrageous conduct. *See* Opp'n 23–24.

denominator of the allegations, however, is that they stem from the manner in which Unum processed her insurance claim. Further, this count, while incorporating all prior allegations, points to "Unum's conduct in handling Dr. Nugent's claim," which includes, *inter alia*, accusing Dr. Nugent of exaggerating her ailments, misleading her as to the scope of her coverage, failing to inform her that her claim had been closed two and one-half years earlier, scheduling and then canceling a medical evaluation, assigning five separate claims representatives to her over a five-year period, advising her of her right to participate in the Claim Reassessment Process while simultaneously asserting that her original claim had yet to be decided, and disparaging her motives and veracity. Compl. ¶ 133. Dr. Nugent pleads that Unum's intentional infliction of emotional distress arises from its "extreme and outrageous conduct in the handling of [her] disability claim." Compl. ¶ 135.

Ultimately, Dr. Nugent fails to plead sufficient facts that might constitute an independent tort, apart from the alleged injuries that are inextricably linked with Unum's duty to perform its obligations under the contract.[4] For instance, Dr. Nugent alleges that Unum frequently questioned her veracity and "harass[ed]" her with repeated requests for information. Compl. ¶ 106. Even if there were a duty, unrelated to the contract, for Unum to refrain from questioning her veracity or "harassing" her with requests, these allegations are not in and of themselves sufficiently egregious to constitute a stand-alone tort. Further, there is no claim of defamation, nor a claim that Unum's "harassing" rose above the mere repeated requests for information, no matter how vexatious or burdensome they were.

---

[4] Any additional expense created by Unum's delay, misrepresentations, or negligence in processing Dr. Nugent's claims may be compensable under contract principles. *Choharis*, 961 A.2d at 1089–90, 1089 n.12.

The allegations substantiate an "injury over and above the mere disappointment of plaintiff's hope to receive [her] contracted-for benefit." *Choharis*, 961 A.2d at 1089. However, a plaintiff must also show that the alleged tort is independent. Dr. Nugent's allegations reveal Unum's incompetent and tardy handling of her disability claim, but not actions or omissions giving rise to a tort independent of the contract. If the contract ceased to exist, a viable intentional infliction of emotional distress claim would not lie in its wake. *See Choharis*, 961 A.2d at 1089. The Court does not minimize the severity or impact of Unum's behavior on Dr. Nugent. Her injuries, if proven, simply must be recovered under contract principles, not tort principles, even if that means certain damages are not recoverable. Accordingly, Count IV of the Complaint will be dismissed.

### C. Implied Covenant of Good Faith and Fair Dealing

The District of Columbia does not recognize the tort of bad faith refusal to pay insurance benefits. *American Registry of Pathology v. Ohio Cas. Ins. Co.*, 401 F. Supp. 2d 75, 79 (D.D.C. 2005) (the "bad faith of an insurer to pay is not a recognized tort in the District of Columbia"); *Choharis*, 961 A.2d at 1087–88. Unum argues that Dr. Nugent's Count II, alleging a breach of the implied contractual covenant of good faith and fair dealing, is merely an attempt to circumvent governing legal principles. Specifically, Unum moves for dismissal of this count because, "as pled by Plaintiff, . . . it seeks extra-contractual, tort-like damages, in contravention of District of Columbia law." Reply 13.

The D.C. Court of Appeals has held that all contracts contain an implied duty of good faith and fair dealing, which means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C.

1988)). "If the party to a contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." *Id.* (quoting *Hais*, 547 A.2d at 987–88). Such a cause of action sounds in contract, not tort:

> Under District of Columbia law, every contract contains within it an implied covenant of both parties to act in good faith and damages may be recovered for its breach as part of a contract action. *See Murray v. Wells Fargo Home Mortgage*, 953 A.2d 308, 321 (D.C. 2008) and cases cited. Disputes relating to the respective obligations of the parties to an insurance contract should generally be addressed within the principles of law relating to contracts, and bad faith conduct can be compensated within those principles.

*Choharis*, 961 A.2d at 1087.

Contrary to Unum's argument, the tort of bad faith and the contractual implied covenant of good faith and fair dealing are not "largely one and the same." Def.'s Mem. 18. *Messina v. Nationwide Mut. Ins. Co.*, 998 F.2d 2 (D.C. Cir. 1993), on which Unum depends, noted that the "bad faith tort is grounded on the covenant of good faith and fair dealing that is implicit in all contracts, supplemented by the idea that insurance contracts have special characteristics that warrant heightened liability for breach of that covenant." *Id.* at 5. This statement, however, was made in the context of discussing the law of other states because the D.C. Court of Appeals had not yet addressed whether the bad faith tort was recognized in D.C. Since *Messina*, the D.C. Court of Appeals has spoken clearly and "bad faith conduct," to the extent proved, "can be compensated within those principles" of the contractual obligation of good faith and fair dealing. *Choharis*, 961 A.2d at 1087.

The crux of Unum's argument appears to focus on the relief sought by Dr. Nugent

in pleading this cause of action.  Unum claims Dr. Nugent seeks extra-contractual damages, such as emotional distress and/or attorney fees, which may be vindicated in tort, but not in a contract claim.  *See* Def.'s Mem. 20–21, Reply 13.  It may very well be that Dr. Nugent will ultimately be precluded from seeking damages for emotional distress or anguish under her claim for breach of the implied covenant of good faith and fair dealing.  *See Howard Univ. v. Baten*, 632 A.2d 389, 392 (D.C. 1993) (noting that "as a general rule, damages for mental anguish suffered by reason of the breach [of a contract] are not recoverable") (quoting *Pfeffer v. Ernst*, 82 A.2d 763, 764 (D.C. 1951)).  Although Dr. Nugent seeks relief for alleged damages potentially unavailable under this claim, she has nonetheless satisfied the minimal pleading requirements to survive a motion to dismiss.  Assuming all allegations as true, Dr. Nugent has sufficiently alleged that Unum has taken steps, or refused to take steps, which ultimately had the "effect of destroying or injuring the right of [Dr. Nugent] to receive the fruits of the contract."  *Hais*, 547 A.2d at 987.  The Complaint sufficiently alleges that Unum failed to act in good faith and may have willfully failed to act in fair dealing with Dr. Nugent.  The motion to dismiss Count II will be denied without prejudice.

### D.  Punitive Damages and Attorney Fees

The Court has found that the Complaint fails to allege an independent tort; thus, the request for punitive damages must also be dismissed.  It is clear that "[w]here the basis of a complaint is, as here, a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious.  The rule in this jurisdiction is that only where the alleged breach of contract merges with, and assumes the character of, a willful tort will punitive damages be available."  *Sere*, 443 A.2d at 37 (quotations omitted).  *Choharis* clarified that where the actions complained of do not constitute an independent tort, the breach of contract cannot merge with and

assume the character of a willful tort.  *Choharis*, 961 A.2d at 1090.  Since the claim for intentional infliction of emotional distress cannot lie, neither can the claim for punitive damages.  Count V of the Complaint will be dismissed.

Unum argues that as a matter of law, Dr. Nugent is not entitled to attorney fees. Unum is correct that D.C. follows the "American Rule" where, unless modified by statute or contract, "generally, each litigant must bear his or her own attorney's fees and litigation costs." *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 473 (D.C. 2008).  The parties do not argue that there is a contractual or statutory basis for an award of attorney fees in this matter.  As with all general rules, however, the American Rule has exceptions.  Dr. Nugent points to cases where the courts found that attorney fees could be awarded due to the oppressive or vexatious conduct of the defendant.  *See, e.g., Siegel v. William E. Bookhultz & Sons, Inc.*, 419 F.2d 720, 723–24 (D.C. Cir. 1969).  "It is the rule in the District of Columbia that, absent a contract or statutory provision or a showing that the defendant's conduct was willfully and oppressively fraudulent, attorney's fees are not generally allowed as damages or costs."  *Continental Ins. Co. v. Lynham*, 293 A.2d 481, 483 (D.C. 1972).  Further, "[i]t is true that the insurer has a duty to process and pay claims expeditiously and in good faith, and that evidence as to the reasonableness or good faith of the insurer in refusing to pay is admissible in an action for attorney's fee based on vexatious refusal to pay."  *Id*.  At this juncture in the litigation, the Court cannot say whether the facts to be discovered will ultimately support such a claim.  However, it also cannot be said, on the bare face of the Complaint, that the claim for attorney fees is legally insufficient to proceed to discovery.  Unum's motion to dismiss Count VI will be denied without prejudice.

### E. Striking Complaint Paragraphs

Because Unum over-reads the scope of the waiver, *see supra* Part A., Unum believes it is totally protected from its own alleged misconduct in handling Dr. Nugent's disability insurance claim during the initial processing of it. Therefore, Unum requests that the Court strike Complaint allegations ¶¶ 57–75, 84, 88–91, 93–94, 100, 103–127, and 132–144, as immaterial or impertinent. As noted above, the Court disagrees with Unum on the scope of the waiver. Moreover, as motions to strike are generally disfavored, *Uzlyan*, 706 F. Supp. 2d at 52, and requests to strike should usually be denied "unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation, or unless it can be shown that no evidence in support of the allegation would be admissible," the motion must be denied. *Cobell v. Norton*, 224 F.R.D. 1, 2–3 (D.D.C. 2004) (internal quotations and citations omitted). Providing Dr. Nugent with the benefit of all facts pled and reasonable inferences, the Court is not convinced these allegations, at this juncture, are clearly immaterial or impertinent.

Furthermore, although the Court will dismiss Dr. Nugent's claims for intentional infliction of emotional distress and punitive damages, the allegations upon which she relies for these claims may prove relevant, and thus discoverable, to the claims for breach of the implied covenant of good faith and fair dealing and attorney fees.

### IV. CONCLUSION

The Court will grant in part and deny in part Unum's partial motion to dismiss and motion to strike allegations [Dkt. # 7]. Dr. Nugent did not waive her right to file suit based upon the claims process predating her election to participate in the Claim Reassessment Process. She cannot, nor does she attempt to, sue Unum for contract damages for the period for which it has paid her

disability benefits. Unum's partial motion to dismiss Count II, breach of implied covenant of good faith and fair dealing, and Count VI, attorney fees, as well as Unum's motion to strike will be denied without prejudice. Unum's partial motion to dismiss will be granted as to Count IV, intentional infliction of emotional distress, and Count V, punitive damages. A memorializing Order will accompany this Memorandum Opinion.


Date: November 24, 2010                _____/s/_____
                                          ROSEMARY M. COLLYER
                                          United States District Judge